Luke A. Spear, In Equity,

*vs.*

Rockland-Rockport Lime Company, et als.

Knox.    Opinion April 5, 1915.

*Bonds.  Corporation.  Creditors.  Demurrer.  Discretionary  Power. Dividends.  Mortgage.  Net Earnings.  Preferential Dividends. Preferred Stockholders.*

1.   The preferential rights of a preferred stockholder arise from his contract, and are enforceable in equity against the corporation and other stockholders in accordance with the terms of his contract.   But aside from his special contract he stands on no better footing then any other stockholder.

2.   A preferred stockholder is not a creditor.   He cannot claim dividends out of funds that are needed for, or that properly should be applied to, the payment of debts.

3.   Directors may use profits for the development of the corporate business, so long as they do not abuse their discretionary power, or violate the charter, or the contracts made, as to profits, with particular classes of stockholders.

4.   When the certificate of a preferred stockholder provides that "he shall be entitled, out of the net earnings of the company, to a semi-annual, preferential, cumulative dividend, to be paid or provided for before any dividend is set apart or paid on the common stock;" he is entitled to have such dividend paid semi-annually, if there are net earnings.

5.   A case in which it appears that the net earnings of a corporation have been applied to the enlargement of the plant, and in which it also appears that by a sale of all the assets, concerning which there is no allegation of fraud, so small a sum was realized, as to show that the net earnings have all disappeared, and the capital itself has been greatly impaired, and in which it further appears that the corporation has apparently ceased to do business, is not a case which calls for the declaration of a dividend to preferred stockholders.   The proper remedy of such stockholders is not dividends, but dissolution.

6.   In a bill brought by one stockholder for the benefit of himself and all other stockholders, to compel the declaration of a dividend, it must be alleged that application has been made to the directors for the declaration of such a dividend, or some reason must be alleged why such an application would be ineffectual. The demand of one stockholder for the payment of the amount claimed to be due to him individually is not an application for the declaration of a general dividend.

On exceptions by plaintiff.    Exceptions overruled.

This is a bill in equity against the Rockland-Rockport Lime Company and the directors thereof, in which plaintiff prays that said company be required to declare and pay a dividend upon its preferred stock from the year 1902 to 1910. The directors who had been served with process, demurred to the bill, which the Justice hearing the case sustained. The plaintiff filed exceptions to the ruling sustaining the demurrer, which exceptions were allowed.

The case is stated in the opinion.

*R. I. Thompson,* for plaintiff.

*A. S. Littlefield,* for defendants.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, PHILBROOK, JJ.

SAVAGE, C. J.    Bill in equity by a preferred stockholder, for himself and in behalf of all other preferred stockholders, against the Rockland-Rockport Lime Company and its directors, for the purpose of requiring a declaration of "a dividend of seven per cent, payable on the first days of March and September of each year with interest on each dividend from the time it became due, until the date of the bill." . The case comes before this court on exceptions to the sustaining of the defendants' demurrer.

The facts stated in the bill, and which must be taken on the demurrer to be true, are these. The defendant corporation was organized in 1900 for the purpose of the manufacture and sale of lime. Its capital stock of $2,000,000 was divided into preferred and common stock. $825,000 of preferred, and $875,000 of common stock have been issued. Each kind of stock was of the par value of $100 a share.

On January 23, 1901, the plaintiff purchased ten shares of preferred stock which he still owns. He received a certificate of stock which contained an agreement "that the preferred stock is entitled, out of the net earnings of the company, to a semi-annual, preferential, cumulative dividend at the rate of seven per centum per annum, and no more, payable on the first days of March and September in each year, to be paid or provided for before any dividend shall be set apart or paid on common stock, that in case of liquidation or dissolution, the preferred stock shall be paid in full at par, together with accrued and unpaid dividends, before any payment is made on the common stock," and so forth.

January 18, 1900, the defendant mortgaged its property and franchise for $1,000,000, to secure the payment of bonds, the proceeds of which, with that of the capital stock gave it a working capital of $2,700,000. In April, 1901, it issued its debenture bonds for $1,000,000 from which it realized the sum of $950,000, thereby increasing the working capital to $3,650,000. Its net earnings to and including 1910 are alleged to have been about $688,000. It is alleged that on December 31, 1910, the corporate assets amounted in value to $4,131,039.76, and its liabilities, outside of capital stock, and including "undivided profits" were $2,431,039.76; that the excess of assets over liabilities is composed in part of the net earnings, which have been applied by the directors to the increase and enlargement of the company's plant, and otherwise to the increase of its assets, instead of being applied to the payment of dividends to preferred stockholders. The complainant alleges that he has duly demanded the sum which should have been due and payable to him, but that the demand has not been complied with.

It is alleged that by the issue of debenture bonds in April, 1901, it was intended wrongfully to create such a large additional indebtedness as would deprive the preferred stockholders of the dividends to which they were entitled; that the refusal to declare dividends was for the purpose of increasing the value of the plant, and of making the claim that the debenture bonds could not be paid at maturity, if dividends on preferred stock were paid; that no provision was made for the payment of the debenture bonds, and that three days before they became due, the company announced that it was not in position to pay them.

Afterwards, another corporation was organized, called the Rockland and Rockport Lime Company. And on July 1, 1911, the defendant sold all its assets, subject to the first mortgage bonds, for $1,081,000, to one Kalloch, the purchaser assuming all the debts, liabilities and obligations of the company, and on the same day Kalloch sold the assets to the Rockland and Rockport Lime Company. And in this connection it is alleged that among the liabilities assumed by Kalloch were undivided profits amounting to $212,256.32.

The foregoing statement embodies the allegations in the bill. And the question is whether upon such a statement, assuming the allegations to be proved, there would be any justification for equitable interference at the suit of a preferred stockholder to compel a distribution of dividends.

As a general rule, the officers of a corporation are the sole judges as to the propriety of declaring dividends, and the courts will not interfere with the proper exercise of that discretion. Yet, when the right to a dividend is clear, and there are funds from which it can properly be made, a court of equity will interfere to compel the company to declare it. Directors are not allowed to use their power illegally, wantonly, or oppressively. *Belfast & M. Lake R. R. Co.* v. *Belfast,* 77 Maine, 445. The rights of a preferred stockholder are enforceable in equity against the company in accordance with the terms of his contract. *Hazeltine* v. *Belfast & M. Lake Railroad Company,* 79 Maine, 411. And all unfair discrimination between preferred stockholders and common stockholders will be prevented. 1 Morawetz, Priv. Corp., Sec. 280.

But even as to a preferred stockholder, unless his contract otherwise provides or requires, the profits or net earnings may be allowed to accumulate, and remain invested in the business. The officers of a corporation are invested with a discretionary power with regard to the time and manner of distributing its profits. They may use the profits for the development of the company's business, so long as they do not abuse their discretionary power, or violate the charter, or the contracts made, as to profits, with particular classes of stockholders. 1 Morawetz, Priv. Corp., Secs. 276, 447.

The preferential rights of a preferred stockholder arise from his contract, which in this case is found in his stock certificate. His contractual rights the court may enforce against the corporation and other classes of stockholders. But aside from his special contract he stands on no better footing than any other stockholder. He can require the payment of dividends, when others cannot, only in case and to the extent that dividends were promised or guaranteed in his contract. Such dividends he may require whenever the company has acquired funds which may rightfully be used for the payment of dividends. 1 Morawetz, Priv. Corp., Sec. 459.

Moreover, a preferred stockholder is not a creditor. He is a stockholder, although his peculiar rights arise from contract. He is a stockholder as to creditors in general, and his rights are subordinate to theirs. He cannot claim dividends out of funds that are needed for, or that properly should be applied to, the payment of debts. *Belfast & M. Lake R. R. Co.* v. *Belfast,* supra. He is entitled to a dividend out of net earnings only.

The plaintiff's contract is that he shall be entitled, out of the net earnings of the company, to a semi-annual, preferential, cumulative dividend, to be paid or provided for before any dividend is set apart or paid on the common stock. And that is why it is called preferential. By being cumulative, if net earnings at any dividend period are insufficient to pay the contract dividend it is to be made up out of subsequent net earnings. And in any event, upon liquidation or dissolution of the corporation, the contract goes on to say, the preferred stockholders are to be paid in full for their stock at par, with all accrued and unpaid dividends, before common stockholders receive anything. One feature of the contract remains to be noticed. The contract was that the preferred stockholder was entitled, out of the net earnings, to semi-annual . . .. . dividends." The defendant contends that under this contract, the plaintiff was not entitled, even if there were net earnings, to have dividends paid for any half year, year, or series of years, that the directors might use the net earnings for the development of the business, and that there was but a single limitation, namely, that the plaintiff must be paid all accrued and unpaid dividends before anything is paid to common stockholders. In other words, it is claimed that the defendant made no promise or guaranty to the plaintiff of any dividends to be paid out of net earnings, at any particular time, and that it will have fully kept and performed the obligation of its contract, if at any time, past or future, it has paid or will pay, the preferred dividends before common ones are paid. That is, it may indefinitely postpone payment. We are unable to concur in this view. This contract like all others must be interpreted in accordance with the expressed intention of the parties, reading the contract in the light of its purposes and existing conditions and surrounding circumstances. And reading the contract in that way, we think it obvious that when the parties agreed that the plaintiff was to be entitled, out of the net earnings, to a semi-annual dividend, they intended that he should be entitled to have a dividend *paid* semi-annually if there were net earnings. Such we think would be the ordinary acceptation of the words used. And if there is any ambiguity in meaning, the contract should be construed more strictly against the company. The phraseology was *its* own, and it should be held to the significance which the words would ordinarily imply to an investor.

It follows, therefore, that the plaintiff is now entitled to cumulative dividends, if there are net earnings, and if now there is any available fund out of which dividends may properly be paid. Here lies the difficulty in the plaintiff's case. It is alleged that the net earnings to December 31, 1910, were $688,000. It is also alleged that these net earnings were applied by the directors to the increase and enlargement of the plant, and "also to the increase of the assets" of the corporation, whereas they should have been applied to the payment of dividends. The plaintiff claims also that the company has $212,256.32 of "undivided profits," which should be applied to dividends. This claim relates to the allegation respecting assets and liabilities on December 31, 1910. It is alleged specifically that the value of the plant of the corporation was $3,567,477.14, and that there were other assets to the amount of $563,562.62, the whole amounting to $4,131,039.76. The liabilities are alleged to be, first mortgage bonds, $988,500; debenture bonds, $1,000,000; interest accrued and unpaid, $33,094.13; accounts payable, $113,689.31; mortgage note account, $80,000; contingent reserve, $3,500. These items amount to $2,218,783.44. If to this be added the capital stock liability of $1,700,000, the total liabilities amounted to $3,918,783.44. And this amount deducted from the total assets leaves a balance of $212,256.32, which is properly called "undivided profits," and which the plaintiff claims is a basis for dividends. But it will be noticed that it is a bookkeeping item, entered to make a complete balance sheet. It indicates, indeed, the excess of all assets over all liabilities, and that is profit. But it does not indicate that there is any fund immediately available for dividends. And as the net earnings had been $688,000, and as no dividends had ever been declared, it shows that the net earnings applied to the increase of the plant and other assets, in excess of $212,256.32, had disappeared in a shrinkage of the value of the plant and other assets.

But it is also alleged that six months later, July 1, 1911, the corporation sold "its entire property of every kind and nature, including its accounts due and cash on hand, through an intermediary, to another corporation, for $1,081,000. This sale was subject to the first mortgage for $1,000,000. And the purchaser assumed all the debts, liabilities and obligations of the old corporation, and agreed to pay the purchase price in debenture bonds. The phraseology of the allegation leaves it uncertain whether the assumption of debts and

so forth was a consideration additional to the $1,081,000, or whether the debts were to be paid out of the $1,081,000. Counsel on both sides have treated the question as if the latter alternative were the true one. And we assume it to be so.

Plaintiff's counsel in argument criticises this sale, but the plaintiff's bill does not suggest any illegality in it. It rather criticises the directors for not having before that time made provision for the extinguishment of the debenture bonds, by payment, renewal or otherwise. It is not alleged that there was any fraud, or want of good faith, in the sale, nor that the purchaser was not a bona fide purchaser. It is not alleged that the property was sold for less than its real value. And even if there were fraud and collusion, and if the directors abused their discretion in making the sale, it is clear that the remedy for such acts does not lie within the scope of this bill, as framed. This bill seeks only a declaration of a dividend and that presupposes a fund or other property out of which it can be paid.

The concrete fact is that all the defendants' property was sold to a purchaser, who under the allegations of the bill must be regarded as a bona fide purchaser, for $1,081,000. No explanation is afforded by the bill of the apparent shrinkage in the net assets of nearly $1,000,000 from December 31, 1910 to July 1, 1911. For present purposes, on demurrer, we must take the statement as of December 31, 1910, to be true. It may be that upon a hearing it would appear that the assets were largely overstated. Or it may be that there was some other cause of shrinkage. Whatever may be the explanation, the fact remains that after the sale, $1,081,000 in new debenture bonds was all the property the corporation had. Whatever may have been the duty of the corporation previously to make provision for dividends, it had made no such provision. The plaintiff did not insist upon his dividends, and did not undertake to compel the company to pay them. And now at the end of the chapter there is only $1,081,000 with which to pay debts and dividends. The net profits had disappeared. The capital stock was practically wiped out. The company owed $1,000,000 of debenture bonds, then overdue. Six months before it had owed nearly $147,000 for unpaid interest and accounts payable. There is no allegation, and there is no presumption, that this indebtedness had been reduced. The provision for the payment of the debenture bonds would absorb $1,000,000 of the purchase price, leaving only $81,000, even if there were no other indebtedness.

The plaintiff contends, however, that as a preferred stockholder he should have had priority over the debenture bonds liability. We do not think so. Stockholders, even preferred stockholders, can have no priority over creditors. The debenture bonds were a lawful indebtedness of the corporation, and were entitled to payment, whether the corporation would be able to keep its contract with the plaintiff for dividends, or not. But if it were otherwise, the length of time that has elapsed since the purchaser assumed the debts and agreed to pay in new debenture bonds, and the nature of the transaction itself, warrants the inference that the transaction is completed, and that $1,000,000 of the purchase price has long since passed, in one form or another, to the holders of the old debenture bonds, and is not now held by the defendant. And if that be so, it is not available for dividends.

The plaintiff also contends that there was no necessity for providing for the payment of all the debenture bonds when due, and relies upon *Hazeltine* v. *Belfast & M. Lake R. R. Co.*, 79 Maine, 411. But that case is not like this one. There the corporation having a large current income sought to set apart enough of it as a sinking fund to pay the entire bonded indebtedness which would become due many years later. The court held that it was not necessary, as a legal proposition, thus to provide for the payment of all the indebtedness at maturity, to the exclusion of dividends for preferred stockholders. But here we have a case where presumably the payment of the bonded indebtedness is an accomplished fact. It is too late, now to recall the payment. It is now immaterial whether it was necessary to pay all of the old debenture bonds, if they are paid. Upon the allegations, we would not be justified in saying that the corporation now has any property in excess of $81,000 available for dividends, and not that, if there is indebtedness to be paid out of it.

It is true that the plaintiff alleges that "there is property out of which a dividend can and should be paid," but that indefinite statement must be interpreted of course in connection with the definite statement of the results of the sale of the property. There is nothing in the bill to indicate what the property is, but counsel argues that the $212,256.32 "undivided profits" shown in the trial balance is property. We have already discussed this question. Although there is a bookkeeping item of "undivided profits," they certainly are not tangible for dividend purposes.

If we assume that at the time of the sale there were no debts except the debenture bonds, and this is the most favorable assumption for the plaintiffs that can be made upon the allegations, and if we assume that the corporation still holds $81,000 of the purchase price, the bill does not show a situation calling for the declaration of a dividend. The corporation having sold all its property, it has apparently "ceased to do business." *Van Oss* v. *Premier Petroleum Co.*, 113 Maine, 180. And the stockholders' remedy is rather by compelling it to be wound up, than by seeking dividends out of net earnings, which no longer exist. Laws of 1905, Chap. 85, as amended by Laws of 1907, Chap. 137. When the entire assets have been reduced to less than ten per cent, at most, of the preferred stock, and the entire corporate plant has been sold, the proper remedy is not dividends, but dissolution. And under the situation described in the bill, dissolution is the only proper remedy, since in no other way can the interests of all parties, including creditors, if any, be safeguarded.

We hold therefore that upon proof of the facts alleged in the bill, without more, the court would not be justified in ordering the payment of a dividend to preferred stockholders, and for that reason the demurrer was correctly sustained.

There is another good ground of demurrer. The plaintiff has not alleged in his bill that any application has been made to the directors to declare the dividend sought for, nor is any reason alleged why such an application would be ineffectual, if there were any funds to divide. One or the other allegation is essential. *Ulmer* v. *Maine Real Estate Co.*, 93 Maine, 324. The plaintiff alleges that he has demanded payment of the amount due by contract, as he claims, on his own stock. His suit is brought for the benefit of all stockholders of his class, and his demand for payment falls far short of an application to have a dividend declared for the benefit of all.

*Exceptions overruled.*
*Bill dismissed with costs.*