*Motion for new trial denied.*

NEW ENGLAND TRUST COMPANY, ET AL.

*vs.*

PENOBSCOT CHEMICAL FIBRE COMPANY, ET AL.

Penobscot.   Opinion, December 19, 1946.

*Verrill, Dana, Walker, Philbrick & Whitehouse,*

*Palmer, Dodge, Chase & Davis,* for plaintiffs.

*Ballard F. Keith,*

*Charles B. Rugg,*

*Warren F. Farr,*

*John J. Phelan, Jr.,*

*Ropes, Gray, Best, Coolidge & Rugg,* for defendants.

SITTING: STURGIS, C. J., THAXTER, TOMPKINS, FELLOWS, JJ. AND MANSER, ACTIVE RÉTIRED JUSTICE.

THAXTER, J. The plaintiffs, who are the holders of 1618 shares out of a total of 2500 of the second preferred stock of the Penobscot Chemical Fibre Company, on behalf of themselves and all other second preferred stockholders similarly situated, filed a bill in equity on May 15, 1945 against the Company and its directors to compel the payment of accumulated dividends on the stock which on March 31, 1945, the end of the fiscal year, amounted to $42 per share. Answers were filed by the defendants to which there were replications by the plaintiffs and a hearing was had on bill, answers and evidence. The sitting justice entered a decree sustaining the bill and ordering the payment of the accumulated dividends which on April 14, 1946, the date of the entry of the decree, had been reduced to

$35 per share. The case is now before us on an appeal from this decree.

The corporate defendant was organized under the laws of Maine in 1882. At all times with which we are here concerned its capital stock issued and outstanding has consisted of 1450 shares of Series A $6 Cumulative Prior Preference Stock of no par value; 1181 shares of Series B $5 Cumulative Prior Preference Stock of no par value; 3000 shares of 7% Cumulative Preferred Stock authorized by stockholders' vote in 1914 of $100 par value, of which 7 shares had been reacquired by the company; 2500 shares of 7% Cumulative Second Preferred Stock authorized by stockholders' vote in 1920 of $100 par value; and 20,000 shares of common stock of no par value. The Prior Preference stock was issued in March 1937 to pay dividend arrearages on the preferred and second preferred stock.

The net profits of the company after taxes for the six years prior to the bringing of the bill in equity were as follows:

|      |              |
|------|--------------|
| 1940 | $   94,089.20 |
| 1941 |   501,665.60 |
| 1942 |   260,168.42 |
| 1943 |    93,996.70 |
| 1944 |    73,832.49 |
| 1945 |    77,928.31 |
|      | $1,101,680.72 |

The amount necessary to pay dividends in full on all classes of preferred stock in each of these years was as stated in the answers $53,056 or $318,336 for the period. It is apparent, therefore, that in each one of these years the preferred dividends were earned and that for the whole period the net earnings were approximately $3\frac{1}{2}$ times the dividend requirements. At the date of the bringing the bill in equity, all the dividends due on preferred stock senior to the second preferred had been paid. At the end of the fiscal year, on March 31, 1945, just prior to

the time when this bill was brought, the company had on hand cash and United States Treasury Savings Notes amounting to $432,361.84 and total current assets of $1,593,177.87 with which to meet total current liabilities of $427,519.26. According to the balance sheet the common stockholders had an equity in this company valued at $4,208,502.98, or a book value for their stock of better than $200 per share.

On January 8, 1945 the plaintiffs, on behalf of themselves and all other second preferred stockholders, made written demand on the company and on the directors that all accumulated dividends on their stock should be declared and paid. No answer having been received to this demand, this action was brought.

The plaintiffs rely on the by-law relating to the second preferred stock, Par. (a) which reads as follows:

"Second preferred stock shall bear date of May 1, 1920, and shall be entitled to dividends at the rate of seven per centum per annum and no more, payable quarterly on the first days of August, November, February and May in each year hereafter.

"Such dividends shall be cumulative so that if on any such quarterly dividend date a dividend of 1¾ per centum of the par value shall not have been paid, the deficiency shall be paid before any dividends shall be declared, paid out, or set apart for any other class of stock, excepting Preferred Stock."

This by-law was enacted in 1920 and has remained in force to the present time exactly as originally worded with the exception that, apparently in 1937 at the time of the issuance of the prior preference stock, the second paragraph was amended to read as follows:

"Such dividends shall be cumulative so that if on any such quarterly dividend date a dividend of one and three-quarters per cent (1¾%) of the par value shall not have

been paid, the deficiency shall be paid before any dividends shall be declared, paid out or set apart for any class of junior stock."

The defendants contend that, in the absence of fraud, bad faith or abuse of discretion, their judgment not to pay dividends is conclusive unless their discretion is limited by statute, charter or by-law. With this general principle we concur. It is a fact that the corporation has made large commitments for additional plant equipment and for improvements, the justification for which seems to be established. And the sitting justice has found that, if the directors had a discretion to withhold dividends on the second preferred stock, they exercised that discretion soundly.

A glance at the balance sheets of this company indicates that the payment of these dividends is not impossible as was the case in *Spear* v. *Rockland-Rockport Lime Co.*, 113 Me., 285, 93 A., 754, 6 A. L. R., 793. Without doubt the money to do so could have been procured without imperiling the credit of the company, and it had the right to borrow money for that purpose. *Hazeltine* v. *Belfast & Moosehead Lake Railroad Co.*, 79 Me., 411, 419, 10 A., 328, 1 Am. St. Rep., 330.

The question before us is a narrow one. On the facts of this particular case, were these plaintiffs entitled as a matter of right to these dividends, or did the directors have a discretion to withhold them?

As we have intimated above, we have no quarrel with the general rule that the declaration of dividends rests in the sound discretion of the board of directors of a corporation; but such discretion may be limited by a contract between the company and its stockholders, *Spear* v. *Rockland-Rockport Lime Co.*, supra, or by a by-law which in effect constitutes such a contract. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass., 1, 13, 20 N. E., 2d, 482. Our court has gone farther than have some others in holding that the discretion of directors is limited when

the preferred stock contract, as was the case here, provides without qualification that stockholders are entitled to dividends at a fixed rate. *Spear* v. *Rockland-Rockport Lime Co.*, supra. In such a case the question is not, whether the directors in carrying out the financial policy of the company have acted wisely in withholding dividends, but rather what are the legal rights of the stockholders.

The question here involved was discussed in *Spear* v. *Rockland-Rockport Lime Co.*, supra. The preferred stock contract there before the court provided "that the preferred stock is entitled, out of the net earnings of the company, to a semi-annual, preferential, cumulative dividend at the rate of seven per centum per annum, and no more, payable on the first days of March and September in each year, to be paid or provided for before any dividend shall be set apart or paid on the common stock." Chief Justice Savage said at page 289:

"The plaintiff's contract is that he shall be entitled, out of the net earnings of the company, to a semi-annual, preferential, cumulative dividend, to be paid or provided for before any dividend is set apart or paid on the common stock. And that is why it is called preferential. By being cumulative, if net earnings at any dividend period are insufficient to pay the contract dividend it is to be made up out of subsequent net earnings. And in any event, upon liquidation or dissolution of the corporation, the contract goes on to say, the preferred stockholders are to be paid in full for their stock at par, with all accrued and unpaid dividends, before common stockholders receive anything. One feature of the contract remains to be noticed. The contract was that the preferred stockholder was entitled, out of the net earnings, to 'semi-annual . . . dividends.' The defendant contends that under this contract, the plaintiff was not entitled, even if there were net earnings, to have dividends paid for any half year, year,

or series of years, that the directors might use the net earnings for the development of the business, and that there was but a single limitation, namely, that the plaintiff must be paid all accrued and unpaid dividends before anything is paid to common stockholders. In other words, it is claimed that the defendant made no promise or guaranty to the plaintiff of any dividends to be paid out of net earnings, at any particular time, and that it will have fully kept and performed the obligation of its contract, if at any time, past or future, it has paid or will pay, the preferred dividends before common ones are paid. That is, it may indefinitely postpone payment. We are unable to concur in this view. This contract like all others must be interpreted in accordance with the expressed intention of the parties, reading the contract in the light of its purposes and existing conditions and surrounding circumstances. And reading the contract in that way, we think it obvious that when the parties agreed that the plaintiff was to be entitled, out of the net earnings, to a semi-annual dividend, they intended that he should be entitled to have a dividend *paid* semi-annually if there were net earnings."

Counsel for the defendants claim that the language quoted is dictum because the bill was in fact dismissed on the ground that the corporate property had been sold and there were no funds available from which payment of dividends could have been made. Conceding that technically the doctrine here laid down is dictum, it is none the less a statement as to how such a contract as we now have before us should be construed; and we cannot ignore it. It certainly means that preferred stockholders under such an agreement are as a matter of right entitled to dividends if they are earned, and that the directors do not have the right to postpone payment of them because in their judgment it is wiser to use the money required for their payment for extensions, rehabilitation and improvements. In

reaffirming this principle we do not mean to imply that such right is an absolute one. Circumstances may exist which would justify the refusal to pay but they are not present in the instant case.

There is a cogent if not a compelling reason why this court should not now modify the doctrine so clearly laid down in the *Spear* case, supra. Dictum though it may have been, it was a carefully worded and deliberate statement as to the rights of preferred stockholders. The by-law which we have before us was drafted within a few years after the opinion in the *Spear* case, supra, was handed down and the money may well have been paid to the corporation by the purchasers of the second preferred stock with the knowledge that under that by-law they were entitled, in accordance with the opinion of this court previously rendered, to semi-annual dividends at the rate of seven per cent, if there were net earnings of at least that amount applicable to such stock. In construing the language used in the contract involved in that case, the court said page 289:

"And if there is any ambiguity in meaning, the contract should be construed more strictly against the company. The phraseology was its own, and it should be held to the significance which the words would ordinarily imply to an investor."

We call attention to the fact that in the case now before us the language of the by-law with which we are dealing did have significance to the investors in this stock. It told them of their right to dividends if they were earned and on that understanding they paid their money to the corporation. For this court to change the rule after the money has been paid would in effect be to sanction a breach of faith.

We must therefore hold that under the contract between the company and the second preferred stockholders as expressed in the by-law the stockholders were entitled as of right to dividends if they were earned.

We should perhaps consider certain contentions of the defendants. They claim that, assuming the doctrine of the *Spear* case, supra, does govern in this instance, yet the by-law has been modified both expressly and by implication.

Our attention is directed to Art. III, Section 7 (d) of the by-laws. This reads as follows:

"The Board of Directors may declare dividends out of the surplus profits whenever they shall deem it expedient."

Here counsel say is an authorization to the directors to exercise discretion. This by-law but expresses the general rule of law on which we have already commented. It was in effect at the time the by-law with respect to the second preferred stock was adopted, and if there is any inconsistency between the two the later one must be held to have modified the first.

The suggestion is made that the second preferred stockholders at the time of the issuance of the prior preferred stock impliedly granted a discretion to the directors to withhold their dividends. The theory is this. The by-law under which the prior preference stock was issued does give to the directors a discretion to withhold the payment of dividends on that stock and it also provides that while there are unpaid dividends on that stock no dividends shall be paid on any junior stock. Therefore by withholding dividends on the prior preference stock no dividends can be paid on the second preferred stock. The second preferred stockholders assented to that by-law, and thereby it is claimed gave to the directors the right, by withholding dividends on the prior preference stock, to withhold dividends on the second preferred stock. The sitting justice ruled, and we think correctly, that the by-law governing the rights of the second preferred stockholders could not thus be modified by indirection. Furthermore at the time the by-law was adopted authorizing the issue of the prior preference stock the by-law now before us was in effect reenacted. It was modified in an unessential respect but in so far as the question now be-

fore us is concerned it was left exactly as it had been. Had there been an intention to change it, that could readily have been done. The same argument now presented to us was made to the Supreme Court of Massachusetts in the case of *Crocker v. Waltham Watch Co.*, 315 Mass., 397, 53 N. E., 2d, 230, and was rejected by that court.

Neither did the second preferred stockholders expressly amend the provisions of the by-law here in question by providing in the by-law authorizing the issuance of the prior preference stock that:

"dividends upon junior stock may be declared by the board of directors of the Company out of any funds available therefor as determined by said board of directors . . . ."

This provision may be reconciled with the by-law here involved.

It is strenuously argued that the corporation has insufficient cash with which to make this payment; that it has tried to borrow sufficient money and has failed. It did have sufficient funds at the time the suit was brought but we prefer not to rest our rejection of the defendants' contention on that ground. With such a favorable financial position as this balance sheet indicates, we frankly do not believe that there is no way that the relatively small amount necessary for this purpose can be procured. And we are fortified in that belief by the fact that in making the commitments for extensive improvements the directors must have determined that the money for such improvements could be raised. It is obvious that they feel it is wiser to use their funds and credit for improvements rather than to make the payment to these stockholders. In that they may be right as a matter of business policy but that is not the question before this court.

*Appeal dismissed.*
*Decree below affirmed.*