**GEORGE E. WARREN CO. v. UNITED STATES.**

**Civil Action No. 6107.**

District Court, D. Massachusetts.

March 17, 1948.

Edwin J. Coughlin and Coughlin & Jacobs, all of Lynn, Mass., and Edward J. Keelan, Anthony Brayton, and Hale & Dorr, all of Boston, Mass., for plaintiff.

William T. McCarthy, U. S. Atty., and Gerald J. McCarthy, Asst. U. S. Atty., both of Boston, Mass., Theron Lamar Caudle, Asst. Atty. Gen., and Andrew D. Sharpe and Ruppert Bingham, Sp. Assts. to Atty. Gen., for defendant.

FORD, District Judge.

This is a suit for refund of surtaxes paid on undistributed profits and interest thereon · for the calendar year of 1936. The action is based upon the provisions of the Revenue Act of 1942, Section 501(a) (3), 56 Stat. 798, 954, 26 U.S.C.A. Int.Rev.Acts, page 344.

The plaintiff, George E. Warren Company, is a corporation organized under the laws of the State of Maine, and having a principal place of business in Massachusetts. It was engaged in the coal business until 1921, when it transferred the coal business to another corporation. Thereafter, most of plaintiff's assets consisted of stocks and bonds of numerous other corporations which it held for investment. Its capitalization was $100,000 until 1921, when it was increased to $1,000,000 by a stock dividend.

The following facts have been stipulated by counsel for the parties and are adopted as findings of the court: In 1936, plaintiff had a taxable net income for income tax purposes of $34,316.35, which was more than offset by a credit of $34,393.13 for dividends received from taxable domestic corporations, resulting in no normal tax. However, there was then a provision in the Internal Revenue Code for a surtax on undistributed corporate profits.

The Commissioner, on June 11, 1940, assessed a $6721.19 deficiency for undistributed profits taxes for the year 1936, which plaintiff paid with interest of $1328.31 on July 2, 1940, making a total deficiency payment of $8,049.50. Plaintiff thereupon filed a claim for refund of this amount with the Collector of Internal Revenue at Boston on October 14, 1940, and it was rejected on May 8, 1941. On February 3, 1942, an action was commenced in the District Court of the United States, District of Massachusetts, for a refund on several grounds existing under the Revenue Act of 1936. When the case came on for trial, plaintiff asserted, as an additional ground for refund, that it was a corporation having a deficit in accumulated earnings and profits and prohibited by the law of Maine from paying dividends during 1936. This additional ground was based on Section 501(a) (1, 2) of the Revenue Act of 1942, which amended Section 14(a) (2) and Section 26(c) of the Revenue

Act of 1936 by adding additional credits for undistributed profits tax.[1]

The District Court dismissed the action on the merits in so far as plaintiff claimed relief under the 1936 Act. As to the claim under Section 26(c) (3), enacted in 1942, the court dismissed on the ground that suit was prematurely brought, in view of the fact that the refund claim of plaintiff under this provision, filed by it on September 23, 1943, had not yet been acted upon by the Commissioner, and that, consequently, the court had no jurisdiction under Section 3772(a) (1) of the Code, 26 U.S.C.A. Int. Rev.Code, § 3772(a) (1). George E. Warren Co. v. United States, D.C., 53 F.Supp. 578.

The Commissioner rejected, on November 1, 1944, the claim of plaintiff for a refund under the 1942 Revenue Act and plaintiff instituted this action on October 28, 1946, within the prescribed time limit. Sec. 501(c) of Revenue Act of 1942; Sec. 3772 of Internal Revenue Code.

Plaintiff relies on the following facts, some found and others stipulated and adopted, to support its claim: On December 31, 1935, the assets of plaintiff corporation included stocks and bonds having a cost price of $1,178,725.60 and $254,849.44 in other assets. Liabilities consisted of $1,000,000 capital stock, $276,575.04 surplus earnings and profits, and $157,000 debts. The market value of the stocks and bonds according to an appraisal made by plaintiff as of December 31, 1935, was $772,207.29. The securities had declined in value $406,518.31. If the balance sheet were adjusted for this re-duced value, it would reveal a deficit in the surplus account amounting to $129,943.27 ($406,518.31 less $276,575.04). Plaintiff contends that the bases for determining whether it is a deficit corporation under Section 26(c) (3) are the rules of corporate law of the state of incorporation; that it had, by reason of the unrealized diminution in value of its stocks and bonds, a deficit in earnings and profits and was prohibited by the law of Maine from declaring any dividend in 1936; and that it is entitled to a refund of the $8,049.50.

It is now clear that Section 26(c) (3) is not to be construed narrowly in a federal tax sense, but according to state law. The court, in United States v. Ogilvie Hardware Co., Inc., 330 U.S. 709, 717, 718, 67 S.Ct. 997, 1001, stated: "* * * But the provision before us is not a general tax exemption to be interpreted in the framework of a currently operating general revenue law. It is a special retroactive relief measure to authorize repayment of taxes collected in previous years under a revenue law which had already been substantially abandoned. The language of this extraordinary relief measure and the circumstances which prompted its passage convince us that Congress intended to provide refunds to corporate taxpayers, with possible minor exception, who had paid undistributed profits taxes as a choice between conflicting state and federal compulsions.

"Furthermore, the very mechanics of the 1942 amendment require that determination of rights to refund under it be based

---

[1] Sec. 501. Additional Credits for Undistributed Profits Tax

"(a) Amendments to the Revenue Act of 1936.

"(1) Section 14 (a) (2) of the Revenue Act of 1936 (relating to definition of undistributed net income) is amended to read as follows:

"'(2) The term "undistributed net income" means the adjusted net income minus the sum of (A) the dividend paid credit provided in section 27, (B) the credit provided in section 26 (c) relating to restrictions on payment of dividends, (C) except in cases where section 26 (c) (1) is applicable, the deficit credit provided in section 26 (f), and (D) the redemption credit provided in section 26 (g).'

"(2) Section 26 (c) of the Revenue Act of 1936 (relating to credits of corporations) is amended by amending the heading to read as follows:

"'(c) Restrictions on payment of dividends.—'; and by amending paragraph (3) to read as follows:

"'(3) Deficit corporations. In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936.'"

on consideration of something other than the tax meaning of the 1936 Act or other tax terminology. The right to recovery in every case depends ultimately upon whether federal law or federal regulatory bodies, or state law or state regulatory bodies, prohibit payments of dividends. In this case the ultimate right to refund depends upon state law. Cf. Lyeth v. Hoey, 305 U.S. 188, 193, 59 S.Ct. 155, 158, 83 L.Ed. 119, 119 A.L.R. 410. Before that right can be finally established, courts must examine state law at least to the extent of determining (1) what is a 'deficit'; (2) what are 'accumulated earnings and profits'; (3) what was the state law on these questions prior to May 1, 1936; (4) whether payments of dividends under these circumstances were prohibited by state law."

■ Article 26-2 of Treasury Regulations 94, as amended by T.D. 5263, 1943 Cum.Bull. 1003 states, in part: "Unrealized appreciation or depreciation in value of assets is not a factor in determining accumulated earnings and profits." This determination of the Commissioner, made before the decision in the Ogilvie case, is so unequivocal that it must be his interpretation of the federal tax meaning of "deficit in accumulated earnings and profits," and not a restatement of what he conceives to be a uniform rule of all the states. (It is clear that such is not the rule in *all* the states. Randall v. Bailey, Sup., 23 N.Y.S.2d 173, affirmed in 288 N.Y. 280, 43 N.E.2d 43. 13 American Jurisprudence, p. 659.) Viewed

in this manner, the regulation obviously conflicts with the ruling of the Supreme Court in the Ogilvie case, and must be rejected.

The questions remain: (1) Whether Maine law prior to May 1, 1936,[2] prohibited the taxpayer from paying dividends in the event it was a deficit corporation on December 31, 1935, and (2) whether under Maine law an unrealized diminution in the value of the securities held by the corporation for investment could result in a deficit in accumulated earnings and profits?

To answer the first question, it becomes necessary to determine what "capital" means in Sections 37 and 93 of the Revised Statutes of Maine in order to decide what must not be reduced or impaired by the payment of dividends. For dividend purposes capital may mean (a) the dollar value of the consideration received on the issuance of the stock (there is no evidence of this in the present case), (b) the par value of the stock at issuance, and (c) the actual capital at the opening of the current accounting period. Kehl, Corporate Dividends, Sec. 16(b), p. 27; pp. 41-45.

■ When Sections 37 and 93 of Ch. 56 of the Maine statutes are read together, it seems clear that the "capital" (Sec. 37) which must not be reduced or impaired by the payment of dividends is the par value of the capital stock of the corporation (Sec. 93).

Dividends may only be paid from profits (Sec. 37) and the question is presented as

---

[2] Revised Statutes of Maine (1930), c. 56:

"Sec. 37. (As amended by Public Laws of 1933, c. 53.) Dividends; limitations on payment; penalty. Dividends of profit may be made by the directors, but the capital shall not thereby be reduced, until all debts due from the corporation are paid. Any officer or member, who votes or aids to make a dividend in violation hereof shall be punished by a fine of not more than $2,000, and by imprisonment for less than 1 year; and all sums received for such dividends may be recovered by any creditor of the corporation in an action on the case."

"Sec. 93. Capital not to be divided until debts paid. Corporations, not created for literary, benevolent, or banking purposes, shall not so divide any of their

corporate property as to reduce their stock below its par value, until all debts are paid, and then only for the purpose of closing their concerns."

"Sec. 102. Withdrawal of capital stock, void as against judgment creditor, receivers, or trustees. No dividend declared by any corporation from its capital stock or in violation of law, no withdrawal of any portion of such stock, directly or indirectly, no cancelation or surrender of any stock, and no transfer thereof in any form to the corporation which issued it, is valid as against any person who has a lawful and bona fide judgment against said corporation, based upon any claim in tort or contract or for any penalty, or as against any receivers, trustees, or other persons appointed to close up the affairs of an insolvent corporation."

to what "profit" means within the provision of the Maine law in order to determine whether a fund was available for the payment of dividends that would not impair the par value of the capital stock.

■ Section 37 of the Maine Revised Statutes states that "dividends of profit may be made." Standing alone, the word "profits" is capable of numerous constructions. It may mean the gain which is made upon a business or investment when both receipts and expenses are taken into account (People v. Board of Sup'rs of Niagara County, 4 Hill, N.Y., 20, 23), or the excess of the aggregate value of all assets over the liabilities including the capital stock. Branch v. Kaiser, 291 Pa. 543, 140 A. 498; see Kehl, Corporate Dividends, p. 55. For any given use its meaning must be derived from the context. See the analysis of Swayze, J., in Goodnow v. American Writing Paper Co., 73 N.J.Eq. 692, 69 A. 1014.

■ In the present case it would seem, in reading Sections 37 and 93, that profit means an excess of assets over liabilities and the par value of the capital stock. When there is no such excess there is no profit, within the meaning of the Maine statute, as any payment then would reduce the par value of the capital stock. In Branch v. Kaiser, supra, the court applied a statute which read that dividends "shall in no case exceed the amount of the net profits actually acquired by the company, so that the capital stock shall never be impaired thereby." 15 P.S.Pa. § 631. The assets of the corporation were less than the capital stock and liabilities. The company made current or annual profits during several years thereafter, and paid dividends. The court stated (140 A. at page

500) that "the only proper and rightful use of these several amounts was to apply them, so far as they went, to the reduction of that deficit, and hence their application to the payment of dividends was, under the situation, clearly unjustifiable and illegal." The court went on to say: "There were in fact no profits or surplus, out of which alone dividends could be declared, * * *. 'Surplus' or 'profits' denote an excess in the aggregate value of all assets of a corporation over the sum of its entire liabilities, including capital stock." See Ballantine and Hills, Corporate Capital and Restrictions on Dividends, 23 Cal.L.R. 229, 240-242; Fletcher, Cyclopedia Corporations Vol. II, Secs. 5329, 5335; Kehl, supra, p. 45.[3]

I find no Maine case that takes a view opposite to the conclusion reached here. Spear v. Rockland-Rockport Lime Co., 113 Me. 285, 93 A. 754, 6 A.L.R. 793; Hazeltine v. Belfast and Moosehead Lake R. Co., 79 Me. 411, 10 A. 328, 1 Am.St.Rep. 330; and Belfast and Moosehead Lake R. Co. v. City of Belfast, 77 Me. 445, 1 A. 362, cases on corporate dividends, do not solve our problem. They contain no interpretation of Sections 37 and 93 of Ch. 56.[4]

■■ If, then, the existence of a fund for the payment of dividends depends on the excess of assets over liabilities and capital stock, we come to the question whether the $406,518.31 of unrealized diminution in market value must be deducted from the assets of the corporation for the purpose of determining whether profits or a deficit exists. I think that it must, and that a deficit of $129,943.27 in earnings and profits existed on December 31, 1935. The authorities are meager on the proper treatment of unrealized diminution. (I find no Maine case on the subject.) Randall v.

---

[3] Under several modern dividend statutes, annual or current profits are available for dividends despite capital impairment, with certain limitations. Del. Rev.Code 1935, § 2066, C. 65, Sec. 34; Kans.Laws, 1939, C. 152, Sec. 80; Cal. Civ.Code (1937) Sec. 346 (1, 2); Minn. Stat. M.S.A. § 301.22, subd. 2.

[4] Spear v. Rockland-Rockport Lime Co., [113 Me. 285, 93 A. 758], supra, interpreting a preferred shareholder's contract for dividends, distinguishes between

profits and net earnings, and by way of dictum indicates that undivided profits are the excess of assets over liabilities. The court also seems to look behind the balance sheet to require that something more than book values be ascertained to determine whether there are profits. "Although there is a bookkeeping item of 'undivided profits,' they certainly are not tangible for dividend purposes." What kind of valuation is required, is not stated by the court, but present market value is not inconsistent with the dictum.

Bailey, supra, appears to be the only clear holding that fixed assets must be written down to their present market value. "In other words, the test being whether or not the value of the assets exceeds the debts and the liability to stockholders, all assets must be taken at their actual value." Page 184 of 23 N.Y.S.2d. The question was not considered on appeal (228 N.Y. 280, 43 N.E.2d 43), but since it was there held that unrealized appreciation of fixed assets may be included among assets, it is certain that the Court of Appeals would require unrealized diminution in value to be deducted. Branch v. Kaiser, supra, contains a holding that unrealized reduction in the value of goods held as part of inventory must be deducted from assets to determine funds available for dividends. Cannon v. Wiscassett Mills Co., 195 N.C. 119, 125, 141 S.E. 344, 348, contains a dictum to the effect that " * * * for the purposes of determining the amount to be declared and paid as a dividend, it is necessary that the true value of the assets, in cash, and not the mere book value, should be ascertained, for no dividend can be lawfully declared and paid except from the surplus or net profits of the business." There are also dicta to similar effect in Siegman v. Electric Vehicle Co., C.C.N.J.; 140 F. 117, 121; Vogtman v. Merchants' Mortgage & Credit, 20 Del.Ch. 364, 178 A. 99; Southern California Home Builders v. Young, 45 Cal.App. 679, 188 P. 586.[5]

The Maine dividend statute (Maine Acts of 1828, Ch. 385, Sec. 3) takes its roots from the dictum of Justice Story in Wood v. Dummer, 1824, 30 Fed.Cas. 435, 436, No. 17,944, that the capital of a corporation is a trust fund for creditors. "Credit is universally given to this fund by the public, as the only means of repayment." Kehl, The Origin and Early Development of American Dividend Law, 53 Harv.L.R. 64. Though the trust fund doctrine has been rejected by most courts (see McDonald v.

Williams, 174 U.S. 397, 19 S.Ct. 743, 43 L. Ed. 1022), it does not follow that protection of creditors has been abandoned. The protection of Secs. 37 and 93 of the Maine statute, i. e., that the par value of the capital stock shall not be impaired by the payment of dividends, would be illusory if, despite large and permanent declines in security values, corporations could continue to pay dividends to the point of insolvency by carrying the assets of a corporation on its books at cost regardless of the present value. Then creditors are undertaking most of the risk of the business enterprise in case of serious loss, while stockholders take the profits if the enterprise is very successful. I do not believe such a result was intended under the Maine statute. Section 101 of Ch. 56, Revised Statutes of Maine, lends support to this conclusion. "The capital stock subscribed for any corporation is declared to be and stands for the security of all creditors thereof, * * *." Section 102 also tends in this direction. (1) "No dividend declared by any corporation from its capital stock * * * is valid as against any person who has a lawful and bona fide judgment against said corporation, * * *." (2) " * * * or as against any receivers, trustees, or other person appointed to close up the affairs of an insolvent corporation." The juxtaposition of phrase (1) to phrase (2) indicates that (1) pertains to a corporation which is solvent. Section 103 describes the rights against the stockholders in such event. Ch. 183 of the 1931, Public Laws of Maine, elaborates the procedure for reduction of the capital of a corporation. Reduction of the par value of the capital stock by payment of dividends when assets at actual value are insufficient to offset liabilities and the par value of capital stock would be short circuiting the legal formalities of Ch. 183, which requires specified formalities for the protection of persons dealing with the corporation. I think that the general tenor of all these provi-

---

[5] See Dodd & Baker, Cases on Business Associations, 1940, p. 1105; Kehl, Corporate Dividends, 1941, pp. 91–93, 96. et seq.; Weiner and Bonbright, Theory of Anglo-American Dividend Law, 30 Col. L.R. 330, 343; 13 Am.Jur. 659; Fletcher, Cyclopedia Corporations, Vol. II, Secs. 5329, 5335; Hatfield, Accounting, 1927, p. 89; Marple, Capital Surplus and Corporate Net Worth, 1936, Ch. 11; Heath, Maine Corporation Law, 1917, and Dyer, Maine Corporation Law, 1911, do not advance the solution of the problem.

sions is that the actual value of the assets must offset liabilities and par value of the capital stock.

The decline in value in this case was radical and part of a permanent settling down of security values. This general reduction in the price level of securities was bound to be considered by the plaintiff corporation before it could declare a dividend. Plaintiff was, therefore, a deficit corporation within the meaning of Section 26(c) (3), unable under the laws of Maine to pay dividends in 1936, and is entitled to the refund demanded.

In view of the foregoing, it is unnecessary to consider the alternative claim under Section 26(f) of the Revenue Act of 1936.

Judgment for the plaintiff with costs.