Lawrence E. GAY

v.

GAY'S SUPER MARKETS, INC., et al.

Supreme Judicial Court of Maine.

Aug. 13, 1975.

Paine, Lynch, Weatherbee & Kobritz by Peter M. Weatherbee, Jordan I. Kobritz, Bangor, for plaintiff.

Eaton, Peabody, Bradford & Veague by Malcolm E. Morrell, Jr., John E. McKay, Bangor, for defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DUFRESNE, Chief Justice.

On appeal. This case involves an intra-corporate dispute in which the plaintiff, Lawrence E. Gay, a minority shareholder, charges the board of directors with the use of illegal tactics calculated to drive him out of the ownership structure of the business organization.

Gay's Super Markets, Inc., incorporated under Maine law, may be described as a closely held corporation. A controlling interest (51% of the common stock) is owned by Hannaford Bros. Co. (Hannaford). The plaintiff and his brother, Carroll V. Gay, own the remaining common stock in equal shares.

Hannaford is a food wholesaler and retailer. It conducts part of its retailing business through Gay's Super Markets, Inc. At the time of the corporate action of which the plaintiff complains, the defendant, Carroll V. Gay, was president, general manager and one of three members of the board of directors of Gay's Super Markets, Inc. The plaintiff, on the other hand, was the manager of the corporation's store in Machias, Maine until July 5, 1971 when he was dismissed from his employment, arbitrarily so he claims. His major complaint, however, is that the board of directors, in failing to declare a dividend for the year 1971, were not acting in good faith, but in fact were using this method as a means of forcing him to release his interest in the business. He characterizes the board's action as a clear abuse of discretion and, in his present action, seeks equitable relief in the form of a mandatory injunction which would order that a reasonable dividend be declared and paid over to the owners of the common stock of the corporation.

The defendants contend that the decision not to declare a dividend at the directors' meeting in January, 1972, was reached solely on a proper business basis, asserting the projected capital needs of the enterprise did not permit the distribution of cor-

porate earnings at that time. They deny their action being motivated by ill-will toward the plaintiff, or for any reason connected with the plaintiff's discharge or his stock ownership.

The Superior Court (Penobscot County), after hearing without jury, ordered judgment for the defendants with costs, from which judgment the plaintiff appeals to this Court. We deny the appeal.

■ The issues presented were, for the most part, factual. The presiding Justice had to determine the motives of the defendant directors, two of whom testified at the call of the plaintiff. Although no specific findings of fact were made by the presiding Justice, it must be assumed that he found for the defendants upon all issues of fact necessarily involved in his ultimate decision in their favor. *Jacobs v. Boomer,* 1970, Me., 267 A.2d 376; *Blue Rock Industries v. Raymond International, Inc.,* 1974, Me., 325 A.2d 66. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), M.R.Civ.P. Moreover, findings of fact,

express or implied, are not clearly erroneous if supported by credible evidence. *Leighton v. Leighton,* 1974, Me., 329 A.2d 164, 166; *City of South Portland v. Pine State By-Products, Inc.,* 1973, 306 A.2d 1, 4; *Ray v. Lyford,* 1958, 153 Me. 408, 409, 140 A.2d 749, 750, 751. See also *Strater v. Strater,* 1951, 147 Me. 33, 35, 83 A.2d 130, 131.

Since the burden is on the plaintiff-appellant to establish clear error in the findings of the single Justice, we should first consider what the plaintiff had to prove at the trial level in order to determine whether he has carried his burden on appeal.

■ Adverting initially to the statute (13–A M.R.S.A. § 514) and the by-laws of the defendant corporation, we find that the declaration of dividends is left to the discretion of the board of directors.[1]

■ Such discretion is, of course, not without limitation:

"As a general rule, the officers of a corporation are the sole judges as to the propriety of declaring dividends, and the courts will not interfere with a proper

---

1. 13–A M.R.S.A. § 514 provides in pertinent part:
"The board of directors of a corporation may, from time to time, declare and the corporation may pay dividends on its outstanding shares in cash or property, including the shares of other corporations, except when the corporation is insolvent or when the payment of the dividend would render the corporation insolvent or when the declaration or payment thereof would be contrary to any restrictions contained in the articles of incorporation, subject always to the following limitations.
A. Dividends may be declared and paid in cash or property only out of the unreserved and unrestricted earned surplus of the corporation, or out of the unreserved and unrestricted net earnings of the current fiscal year and the next preceding fiscal year taken as a single period, except as otherwise provided in this section and in the sections pertaining to dividends and distributions from capital surplus. If paid out of such net earnings, concurrently with the distribution thereof shareholders shall be

given notice of the source of the dividend, and of the fact that there was no earned surplus from which it could have been paid.
. . . ."
Article II, Section 3 of the by-laws of Gay's Super Markets, Inc., provides in part as follows:
"The common stock shall represent the full equity in the properties of the company after its indebtedness and provisions for the preferred stock . . . . Subject to dividend rights of the preferred stock, it shall be entitled to dividends as declared in the discretion of the Directors out of net earnings available therefor as determined by the Board of Directors in accordance with sound accounting practice."
The investment of such discretion in the directors is in accordance with the normal Maine practice. See, e. g. *New England Trust Co. v. Penobscot Chemical Fibre Co.,* 1946, 142 Me. 286, 50 A.2d 188; *Spear v. Rockland-Rockport Lime Co.,* 1915, 113 Me. 285, 93 A. 754; *Whittemore v. Continental Mills,* 1951, D.Me., 98 F.Supp. 387.

exercise of their discretion . . . Yet when the right to a dividend is clear, and there are funds from which it can be properly made, a court of equity will interfere to compel the company to declare it. Directors are not allowed to use their power illegally, wantonly or oppressively." *Belfast and Moosehead Lake Railroad Co. v. City of Belfast,* 1885, 77 Me. 445, 454, 1 A. 362.

See also *Hazeltine v. Belfast and Moosehead Lake Railroad Co.,* 1887, 79 Me. 411, 10 A. 328; *Spear v. Rockland-Rockport Lime Co.,* 1915, 113 Me. 285, 93 A. 754; *New England Trust Co. v. Penobscot Chemical Fibre Co.,* 1946, 142 Me. 286, 50 A.2d 188; *Whittemore v. Continental Mills,* 1951, D.Me., 98 F.Supp. 387.

■ To justify judicial intervention in cases of this nature, it must, as a general proposition, be shown that the decision not to declare a dividend amounted to fraud, bad faith or an abuse of discretion on the part of the corporate officials authorized to make the determination. *New England Trust Co. v. Penobscot Chemical Fibre Co.,* supra, 142 Me. at 290, 50 A.2d 188. See also 19 Am.Jur.2d (Corporations) § 905 at 385 and *Anderson v. Bean,* 1930, 272 Mass. 432, 172 N.E. 647, 652, wherein the Massachusetts Court stated:

"The general principle is that stockholders have no individual interest in the profits of a corporation until a dividend has been declared, that the accumulation of a surplus does not of itself entitle stockholders to a dividend, that the time when a dividend shall be declared and its amount rest in the sound discretion of the corporation or its authorized officers, usually the board of directors, that the action of such officers will not be disturbed if taken in good faith according to law and not in plain violation of the rights of stockholders, and that rational presumptions will be indulged in favor of the honest decision of such officers."

■ The burden of demonstrating bad faith, fraud, breach of fiduciary duty or abuse of discretion on the part of the directors of a corporation rests on the party seeking judicial mandatory relief respecting the declaration of dividends. *Cashman v. Petrie,* 1964, 14 N.Y.2d 426, 252 N.Y.S. 2d 447, 201 N.E.2d 24; *Jones v. Motor Sales Co. of Johnstown,* 1936, 322 Pa. 492, 185 A. 809.

■ Furthermore, judicial review of corporate management decisions must be viewed in the light of this other rule that "it is not the province of the court to act as general manager of a private corporation or to assume the regulation of its internal affairs, . . . ." *Bates Street Shirt Company v. Waite,* 1931, 130 Me. 352, 359, 156 A. 293, 298.

■ If there are plausible business reasons supportive of the decision of the board of directors, and such reasons can be given credence, a Court will not interfere with a corporate board's right to make that decision. It is not our function to referee every corporate squabble or disagreement. It is our duty to redress wrongs, not to settle competitive business interests. Absent any bad faith, fraud, breach of fiduciary duty or abuse of discretion, no wrong cognizable by or correctable in the Courts has occurred.

■ In determining whether the evidence in the case shows the existence of bad faith or abuse of discretion, the Court must look to the totality of the circumstances surrounding the corporate policy decision in the light of the financial condition and requirements of the corporation.

"There are no infallible distinguishing earmarks of bad faith. The following facts are relevant to the issue of bad faith and are admissible in evidence: Intense hostility of the controlling faction against the minority; exclusion of the minority from employment by the corporation; high salaries, or bonuses or cor-

porate loans made to the officers in control; the fact that the majority group may be subject to high personal income taxes if substantial dividends are paid; the existence of a desire by the controlling directors to acquire the minority stock interests as cheaply as possible. *But if they are not motivating causes they do not constitute 'bad faith' as a matter of law."* Gottfried v. Gottfried, Sup.1947, 73 N.Y.S.2d 692, 695. (Emphasis added).

In short, the plaintiff had to prove to the satisfaction of the Court below that the factual circumstances which caused him to charge the board of directors with bad faith and abuse of discretion were the motivating factors behind the board's policy of no dividend in enhancement of their personal interests rather than the promotion of the corporation's welfare. Id.

While his complaint is strong on allegations of wrongdoing on the part of the board of directors in adopting such policy of no dividend, the plaintiff failed to present any evidence that the corporate decision was in fact motivated by the considerations which he attaches to the action of the members of the board.

■ It was plaintiff's apparent theory at trial, that the fact he was dismissed from his employment at the Machias store and the board of directors subsequently voted not to declare a dividend was all he needed to show in proof of his case. The only witnesses at trial, Carroll Gay and James L. Moody, testified that their decisions as directors were based exclusively upon business considerations. The presiding Justice believed them and, on the record before us, we cannot conclude that he was clearly wrong. As has been noted, the legal analysis of the facts in cases like the present one, is limited to a determination of what "motivating causes" are involved. *Gottfried v. Gottfried,* Sup.1947, 73 N.Y. S.2d at 695. Here, the presiding Justice determined that the board of directors were prompted in their actions by the financial situation of Gay's Super Markets, Inc. A review of the testimony at trial reveals ample support for his decision.

Carroll Gay testified that the dividend was withheld because of the contemplated expansion of the corporation's facilities. He stated that the market in Machias had outgrown its physical plant and this caused merchandizing problems. He further added that the "I.G.A." grocery chain had purchased land in Machias and that this development under the existing conditions would result in a loss of business to the corporate defendant's store. Carroll Gay also viewed the situation in Machias already "very competitive." He pointed out that the adoption, by competitors in the area, of a new discount merchandizing system applied added pressure on Gay's Super Markets, Inc., to improve and expand its physical plant in Machias. In addition thereto, Carroll Gay's testimony indicates that in November, 1972 his corporation made good on its plan to open a new market in Calais. He stated that $70,000 in corporate funds were allotted to that operation. He further said that the projected costs of operating the new market included anticipated losses for the first year or two of its existence. These anticipated losses are typical start-up costs. Gay stated that payroll and utility expenses incurred before the store actually opened to the public accounted for much of the loss. Finally, Carroll Gay, in response to a direct question, testified that the termination of Lawrence Gay's employment was not a factor in deciding not to declare a dividend.

The testimony of director James L. Moody substantially corroborated the evidence given by Carroll Gay. He related that, although Gay's Super Markets, Inc. had approximately $125,000 in cash or its equivalent at the time in question, the directors felt that, due to the expansion commitments of the company, these funds could not be considered as available for dividends. He stated that it was anticipated the new store in Calais would lose about

$25,000 in its first year of operation. He further related that it was the board's belief, "the store that does reasonably well from the start normally will lose the first year about the same amount of money as one week's sales. We thought the store would average about $25,000 a week sales in the very early stages." He consistently asserted that the motivating cause for not declaring a dividend was the need for, and the expenses of, expansion.

The minutes of the directors' meeting of January 25, 1972 show a discussion of the financial needs of the corporation and refer extensively to the anticipated expansion in Calais and Machias. They then contain the following data: "The matter of dividends was then discussed; however, after reviewing the anticipated needs of the corporation, particularly in Calais, and upon motion therefore duly seconded, it was unanimously voted: that the corporation not declare a dividend this year."

■ The evidence in the record, both documentary and testimonial, gives, as reasons for the failure to declare a distribution of corporate funds, the financial needs of the company. Nowhere is there direct evidence in support of the plaintiff's charges. In order for the plaintiff to prevail, the presiding Justice would have been required to disbelieve the testimony of the only witnesses who testified before him. It would have been necessary for him to infer, from the mere fact of the existence of a cash surplus, that the refusal to declare a dividend was an abuse of discretion. Given the competitive nature of the business here involved and given the fact this corporation had embarked upon a significant expansion program, we are unable to say that the conclusion of the presiding Justice, that there was no such abuse of discretion, was clearly wrong. The Justice below had the witnesses before him and we must conclude that, due to his opportunity to hear them and to observe their demeanor, he found them credible. See M.R.C.P. rule 52(a). The activity of the directors in this case was clearly not inconsistent with sound business practices.

"In making decisions with respect to dividends, the board must consider a number of factors. It must balance the expectation of stockholders to reasonable dividends when earned against corporate needs for retention of earnings. The first responsibility of the board is to safeguard corporate financial viability for the long term. This means, among other things, the retention of sufficient earnings to assure adequate working capital as well as resources for retirement of debt, for replacement and modernization of plant and equipment, and for growth and expansion. The nature of a corporation's business, as well as the policies and long-range plans of management, are also relevant to dividend payment decisions. Directors of a closely held, small corporation must bear in mind the relatively limited access of such an enterprise to capital markets. This may require a more conservative policy with respect to dividends than would be expected of an established corporation with securities listed on national exchanges." *United States v. Byrum*, 1972, 408 U.S. 125, 140, 92 S.Ct. 2382, 2392, 33 L.Ed.2d 238, 249.

In light of the directors' clear obligation to assure the continued viability of the corporate entity and upon the facts elicited at trial and presumably found by the presiding Justice, we do not see this case as one presenting that clear situation requiring judicial intervention. Such power will only be exercised in "extreme cases." Cf. *Bates Street Shirt Co. v. Waite*, 1931, 130 Me. 352, 359, 156 A. 293.

The entry will be

Appeal denied.

WEATHERBEE, J., did not sit.

All Justices concurring.