STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-326

APR 3 /0 54 AM '02

ROBERT L. GUITARD, et al.,

       Plaintiffs

     v.

GORHAM SAVINGS BANK, et al.,

       Defendants

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT

DONALD L. GARBRECHT
LAW LIBRARY

APR 17 2002

Before the court are the parties' cross motions for summary judgment. By request of the parties, oral argument was held on those motions on March 26, 2002.[1]

Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. See Handy Boat Service, Inc. v. Professional Services, Inc., 1998 ME 134, ¶ 16, 711 A.2d 1306, 1310 (construing former Rule 7(d)). The facts must be considered in the light most favorable to the non-moving party. E.g., Panasonic Communications & Systems Co. v. State of Maine, 1997 ME 43, ¶ 10, 691 A.2d 190, 194. Thus, for purposes of summary judgment, any factual disputes must be

---

[1] Pursuant to this court's order of September 27, 2001, all of the materials filed in connection with the cross-motions, originally filed under seal, have now been placed in the public court record. The only exception is that certain portions of the Bank's strategic plan have been redacted in the public file, and a complete copy of the Bank's strategic plan has been filed under seal along with the original Yandell affidavit.

resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Harkness v. Fitzgerald, 1997 ME 207, ¶ 5, 701 A.2d 370, 372.

The court has reviewed the parties' Rule 56(h) statements of material facts and concludes that most of the facts in this case are undisputed. The primary differences between the parties turn on (1) when the current by-law relating to "dividends of interest" was instituted; (2) the competing inferences the parties draw from historical documents relating to the Bank's past payment of "interest", "dividends of interest", "dividends", and "extra dividends"; (3) whether the Bank's strategic plan justifies the accumulated earnings that have been retained by the Bank; and (4) whether the opinions of plaintiffs' expert generate any genuine disputes of material fact. The other factual issues disputed by the parties are either exceedingly minor, are not substantiated by appropriate record references, or both. In all respects, where any dispute of fact exists that is properly supported by record references, the facts must be considered in the light most favorable to the party opposing summary judgment.[2]

Plaintiffs' Claims

All of plaintiffs' claims turn on whether they have an enforceable right to the payment of dividends under circumstances where the Bank could pay such

---

[2] For instance, the court will assume for purposes of this motion that the by-laws in effect prior to December 2000 were as stated in the Guitards' passbooks. See plaintiffs' Rule 56(h) statement at ¶ 7.

dividends while still maintaining its status as a "well-capitalized" bank under federal banking regulations. See 12 C.F.R. § 325.103(b). To the extent that the plaintiffs claim that the Bank was compelled to pay dividends from the Bank's surplus earnings, their argument is foreclosed by Lovell v. One Bancorp, 614 A.2d 56 (Me. 1992) (on certified questions of state law from federal court). See Lovell v. One Bancorp, 818 F. Supp. 412 (D. Me. 1993), aff'd mem. 14 F.3d 44 (1st Cir. 1994); Lovell v. Peoples Heritage Bank, 818 F. Supp. 427 (D. Me. 1993), aff'd mem., 14 F.3d 44 (1st Cir.), cert. denied, 512 U.S. 1235 (1994). Lovell casts doubt on the status of depositors as equity owners of mutual savings banks and makes clear that since at least 1923, payment of dividends has been discretionary. 614 A.2d at 66.

Plaintiffs, however, argue that the Bank's discretion to pay dividends is not non-reviewable, that they have a right under the Bank's charter and bylaws to the payment of dividends, and that they have at least raised issues of fact as to whether the Bank's decision not to pay dividends constituted an abuse of discretion, a breach of fiduciary duty, or was a product of bad faith. These arguments were not raised directly in Lovell, but the Lovell decision nevertheless casts a long shadow on these issues.

At the outset, although plaintiffs have asserted three independent tort claims -- for "abuse of power," "bad faith," and "breach of fiduciary duty" -- the court agrees with defendants that Maine does not recognize free-standing torts for "abuse or power" or "bad faith" and that counts 4 and 5 of the complaint should therefore be dismissed. Plaintiffs' allegations of abuse of discretion and bad faith may

3

nevertheless be relevant to their claim that the Bank breached its contract by failing to exercise its discretion to declare dividends under the circumstances of this case, and these issues will be considered below.

Plaintiffs' tort claims for breach of fiduciary duty require additional analysis. it is well settled that officers and directors of a corporation owe a fiduciary duty to both the corporation and its shareholders requiring them to perform their duties honestly, faithfully, and without negligence. Depositors in a mutual savings bank, however, are not shareholders. Although they have a nominal ownership interest in the bank, their essential relationship to the bank is that of creditors. See Lovell, 614 A.2d at 66-67. Fiduciary duties are not inherent in a debtor-creditor relationship. E.g., First NH Banks Granite State v. Scarborough, 615 A.2d 248, 250 (Me. 1992). Moreover, with one exception, plaintiffs are not suing the officers or directors of the Bank but the Bank itself.[3] The court concludes that while it is conceivable that a bank may owe a fiduciary duty to depositors under certain circumstances, it does not owe a fiduciary duty to plaintiffs under the circumstances of this case, and that plaintiffs' tort claims for breach of fiduciary duty should therefore be dismissed. Once again, however, the issues raised by plaintiffs' fiduciary duty claims are

---

[3]  Of the Bank directors or trustees who plaintiffs contend should have declared dividends, only Robert Dunton, the Chairman of the Bank's Board of Directors at the time the complaint was filed, is named as a defendant. The court need not decide whether a breach of fiduciary duty claim can be asserted against only one director for alleged acts taken by the board as a whole because it concludes that the status of depositors is sufficiently dissimilar from shareholders so that no tort claim lies for breach of fiduciary duty against Dunton in this case.

4

relevant to their contract claims -- that the bank wrongfully failed to exercise its discretion to pay dividends -- and will be considered in that context.

Charter and Bylaws

Plaintiffs' contractual claim that they were entitled to the payment of dividends is based on the proposition that, while the Directors have some discretion with respect to dividends, that discretion is constrained by the Bank's charter and its bylaws.[4] With respect to the charter, that issue is resolved by Lovell's holding that any preexisting charter provisions have been superseded by the applicable statutes governing mutual savings banks. See 614 A.2d at 65-66.

Plaintiffs' reliance on the Bank's bylaws poses a different issue because, as plaintiffs point out, the applicable statutes -- at least until June 1997 -- provided that the directors

> may declare such dividends or interest as in their judgment should be declared in light of the bank's condition and earning power and as may permitted or required by the bank's bylaws.

9-B M.R.S.A. § 523(1), repealed effective June 5, 1997 by Laws 1997, c. 398, § K-7 (emphasis added).

---

4   As noted above, plaintiffs have not joined all of the Directors of the Bank even though the directors are arguably a necessary party to their equitable claims that dividends should be compelled by judicial order. See Whittemore v. Continental Mills, 98 F.Supp. 387, 391-93 (D. Me. 1951) (concluding that directors not subject to the court's in personam jurisdiction were not indispensable parties but apparently assuming they were necessary parties). In contrast to the out of state directors in Whittemore, the other directors of Gorham Savings Bank are presumably persons who could be joined in this case. No objection based on the failure to join the other directors has been raised by any party, however, and the court has no desire to rest a decision on an issue that, in the context of this case, appears to constitute a technicality.

Plaintiffs then point to the bylaws contained in plaintiffs' passbooks, which provide in Article 3 that "the Trustees shall declare <u>dividends of interest</u> at such rates and at such times as the profits of the bank will allow. . ." (emphasis added).[5] Plaintiffs appear to agree that this provision still calls for the exercise of some discretion (in determining to what extent the Bank's profits allow payment of "dividends of interest") but contend that this bylaw significantly limited the Board's discretion so long as profits were adequate (Trustees "shall declare").

The problem with plaintiffs' argument is that the bylaw refers to "dividends of interest", not "dividends" as that term is commonly understood. After a review of the entire record, the court concludes that the term "dividends of interest" is a term of art that means what is commonly understood to be interest. See, e.g., the Bank's initial bylaws (Palmer Ex. A), Art. 13 (referring to "dividends of interest" and "interest" interchangeably). Moreover, the Bank's bylaws over time, as well as the Maine statutes applicable to Mutual Savings Banks, also have on occasion used not just the term "dividends of interest" but also the term "dividends" to refer to what are now commonly understood to constitute interest payments. E.g., Laws 1923, ch. 144, § 34. Considered in context, however, none of these references -- with the exception of references to "extra dividends" in 9-B M.R.S.A. § 523(2), repealed

---

[5] There is a dispute as to whether these bylaws were applicable during the period of time for which plaintiffs seek payment of dividends (1994-99) but for purposes of this action, the court will assume the passbook language relied on by plaintiffs is the operative wording. It is undisputed that at least as of December 2000, this bylaw was replaced with language that provided for payment of such "dividends of interest" as the earnings of the Bank may allow "in [the Board's] sole determination." Exhibit C to Palmer affidavit.

effective June 1997 by Laws 1997, ch. 318, § K-7[6] -- denominates the kind of dividends now sought by plaintiff: distributions of the Bank's surplus capital or net profits above and beyond the amounts paid as interest.

Because the bylaw relied on by plaintiffs governs interest, not dividends, plaintiffs' reliance on that bylaw is misplaced. Similarly inapposite are cases upholding preferred shareholders' rights to compel dividends based on contractual rights derived from bylaws. E.g., New England Trust Co. v. Penobscot Chemical Fibre Co., 142 Me. 286, 50 A.2d 188 (1946).[7] That does not, however, end the inquiry. The court must still decide whether plaintiffs have a right to judicial review of the Bank's failure to declare any "extra dividends" from 1994 to 1999 and continuing to the present.

Extra Dividends - Business Judgment Rule

Under the Maine Banking Code, notwithstanding the absence of any bylaw provision, the Bank had the discretion to declare extra dividends from the

---

[6] See also Laws 1923, ch. 144, § 34 (reference to "extra dividends" that may be paid from net profits as distinguished from other "dividends" that are actually interest payments); Palmer Ex. E ("extra dividends" voted by Trustees in 1929, 1930 and 1931).

[7] If the bylaws had required the Bank to declare dividends (as that term is commonly understood) "at such rates and at such times as the profits of the bank will allow," the court would then have to consider the extent of the Bank's discretion to determine the amount and timing of such dividends and the extent to which the business judgment rule applied to that discretion. See discussion below. Arguably, the business judgment rule would insulate such a decision from review in the absence of bad faith or a conflict of interest. It is also arguable, however, that such a bylaw would constrain the Bank's discretion to accumulate net earnings above and beyond the amount needed to insure soundness.

undivided profits of the bank at least until June 1997. <u>See</u> 9-B M.R.S.A. § 523(2),

<u>repealed</u>, Laws 1997, ch. 398, § K-7:

> The directors, in their discretion, may declare an extra
> dividend payable from the undivided profits of the bank
> when in their opinion the undivided profits are more
> than adequate for protection of the bank's depositors. . .

Notably, section 523(2) also provided that "[s]uch action shall not become effective

until written approval thereof has been given by the [superintendent of banking]."

Extra dividends of this nature appear to have been declared by the Bank during the

years 1929-1931. Palmer, Exhibit E.

Plaintiffs contend that although section 523(2) was repealed in 1997, authority

to pay extra dividends still exists in the Banking Code as amended. The court is

unable to find any statutory authority to this effect.[8] Assuming that the authority to

pay extra dividends expired in 1997, however, plaintiffs' claim for such dividends

for the years 1994-1996, as set forth in counts VII, VIII and IX of their complaint,

would survive. Ultimately, because the court concludes that plaintiffs have not

generated triable issues of fact with respect to the payment of extra dividends at any

time from 1994 to the present, it need not decide whether mutual savings banks

retain residual authority to pay dividends notwithstanding the repeal of 9-B

M.R.S.A. § 523 in 1997.

---

[8] 9-B M.R.S.A. § 324(1)(C) speaks to the issue but relates solely to dividends or interest paid to the persons putting up a bank's initial capital and also limits such dividends or interest to the maximum rate paid on the Bank's accounts.

Even ignoring the fact that extra dividends could only be paid with the approval of the superintendent under § 523(2), the Bank's discretionary decision as to whether or not to declare dividends is shielded by the business judgment rule. The business judgment rule does not render the Bank's decisions non-reviewable but it limits review to instances where business decisions result from fraud, bad faith, or conflict of interest. See, e.g., Rosenthal v. Rosenthal, 543 A.2d 348, 352-54 (Me. 1988); Gay v. Gay's Super Markets Inc., 343 A.2d 577, 580 (Me. 1975).[9] Negligent decisions honestly reached are entitled to the protection of the business judgment rule. Rosenthal, 543 A.2d at 353.

In this case plaintiffs have failed to demonstrate the existence of any genuine dispute for trial on the issues of bad faith, self-dealing or conflict of interest. Plaintiffs' thesis is that the Bank has been accumulating capital and not paying dividends so that there will be a healthy surplus from which directors and other bank insiders can profit in the event of a conversion from mutual to stock form. This suspicion does not create a genuine issue for trial in light of the undisputed facts that the Bank's directors have never seriously considered a conversion from mutual to stock forms, that the Board has in fact voted to maintain the Bank's mutual form, and that the Bank has identified its strong capital position and its

---

[9] The Gay case refers to fraud, bad faith and "abuse of discretion". 343 A.2d at 580. Looking to the facts of Gay, however, it is evident that an abuse of discretion in this context requires some wrongdoing or conflict of interest by the directors and does not exist merely because a decision honestly reached may appear to be negligent or arbitrary. This is consistent with Rosenthal and with the business judgment rule as it is generally understood.

status as a mutual institution as its greatest strengths. Bank's Rule 56(h)(1) statement ¶¶ 33-35 (undisputed).

Plaintiffs are therefore reduced to the arguments that the capital accumulated by the Bank exceeds any of the bank's realistic business needs and that their expert disagrees with the Bank's board and management as to how strong a capital position is advisable. Neither of these arguments are sufficient to overcome the business judgment rule, notwithstanding plaintiffs' unsubstantiated suspicions that the Bank directors and managers are harboring an intent to convert sometime in the future. [10]

In sum, while cases involving holders of preferred stock demonstrate that contractual claims to compel payment of dividends may be brought in appropriate circumstances, see New England Trust Co. v. Penobscot Chemical Fibre Co., 142 Me. 286, and common stockholders may also seek to compel dividends notwithstanding the business judgment rule if the directors' failure to pay dividends was a product of fraud, bad faith, or conflict of interest, see Gay v. Gay's Super Markets, Inc., 343 A.2d 577, the plaintiffs in this case have demonstrated neither the existence of a contractual right nor the existence of disputed facts sufficient to overcome the

---

[10] It bears emphasis that even if a conversion were contemplated, the court has considerable doubt that this would demonstrate bad faith or a conflict of interest on the part of the directors. Plaintiffs' argument to the contrary depends on the theory that Bank insiders stand to make an unwarranted profit on conversion. In the Lovell case, however, depositors had the first priority to subscribe to the stock offering. See 614 A.2d at 59. If the stock offering of a converted mutual represents a favorable economic opportunity, depositors such as plaintiffs stand to benefit therefrom.

business judgment rule.[11] Accordingly, their complaint must be dismissed even if it is assumed that as depositors in a mutual savings bank they would have equivalent rights to compel dividends as shareholders in a corporation. As discussed below, however, Lovell casts substantial doubt on the latter assumption.

## The Status of Depositors

The Law Court's recognition that depositors in a mutual savings bank have only what that court described as a "nebulous and contingent" interest above and beyond the right to their deposits plus contractual interest, Lovell, 614 A.2d at 66, supports the conclusion that plaintiffs in this case do not have a right to compel the Bank to exercise its discretion to pay dividends out of accumulated profits. The assumption that depositors have the same rights as shareholders appears unwarranted since depositors -- unlike shareholders -- have not invested money in the bank and do not have funds at risk. Id. at 67. It is true that stockholders, unlike depositors, have other remedies in the event they are unhappy with the dividend policies of a corporation (e.g., the right to seek to replace the directors). However, that merely reflects the fact that stockholders, as investors who have placed their capital at risk, are entitled to a role in the governance of the corporation. This is not true of depositors. Indeed, the Banking code expressly does not provide that depositors in a mutual savings bank have any role in the nomination or election of

---

[11]     In Whittemore v. Continental Mills, 98 F. Supp. at 389-90, the allegation that no dividends were declared because of a conflict of interest on the part of the majority shareholder was found to state a claim. In contrast, the instant case is at the summary judgment stage and plaintiffs have not demonstrated the existence of a factual dispute for trial as to whether any conflict of interest exists.

11

directors. See 9-B M.R.S.A. § 326(1)(B) and (C) (directors elected by corporators). Nor does it appear unfair to depositors to deny them the right to compel payment of dividends. For instance, it is undisputed in this case that when the Guitards opened their accounts with the Bank, they did not expect to receive anything more than interest on their deposits. Bank's Rule 56(h) statement ¶ 14 (undisputed).

Put another way, if depositors have no right under Lovell to a distribution of a mutual savings bank's surplus on conversion, it would be anomalous to conclude that they have a right -- prior to any conversion -- to compel the Bank to exercise its discretion to distribute the surplus by way of dividends. Moreover, as noted above, even if depositors are presumed to have the same rights to compel dividends as common stockholders in a corporation, the plaintiffs have not demonstrated the existence of any fraud, bad faith, or conflict of interest that would deprive the bank of the benefit of the business judgment rule in this case.

The entry shall be:

For the reasons herein stated, plaintiffs' cross motion for summary judgment is denied. Defendants' motion for summary judgment is granted and the complaint is dismissed.

Dated: April _9_, 2002

_____
Thomas D. Warren
Justice, Superior Court

Date Filed __05-22-00__  __CUMBERLAND__  Docket No. __CV 00-326__

County

Action __DAMAGES__

ROBERT L. GUITARD
EDWARD P. GUITARD
GERALDINE M. GUITARD

GORHAM SAVINGS BANK
ROBERT E. DUNTON

AMERICA'S COMMUNITY BANKERS (Intervenors

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| WILLIAM D. ROBITZEK, ESQ 784-3576<br>PO BOX 961, LEWISTON ME 04243 | PETER CULLEY ESQ (DUNTON & GORHAM SAVINGS)<br>ONE MONUMENT SQUARE    791-1100<br>PORTLAND ME 04101<br><br>Beth Dobson/Jacqueline Rider, Esqs.<br>PO Box 586, PM 04112-0586 (Interv.)<br>Merritt Carey, Esq. |

| Date of Entry | Mark Walker, Esq. PO Box 735<br>Augusta Me 04330 (Amici curiae) | John Gill, (General coun.Amici curiae)<br>1120 Connecticut Ave. N.W. Washington |
|---|---|---|
| 2000<br>May 22 | | DC 20036 |

| Date of Entry | |
|---|---|
| 2000<br>May 22 | Received 05-22-00:<br>Complaint Summary Sheet filed. |
| "    " | Class Action Complaint (Request Trial by Jury on All Alternative<br>Counts VII through XII) filed. |
| "    " | Jury Fee $300.00 PAID. |
| June 21 | Received 06-21-00.<br>Summons filed showing officer's return of service on 06-13-00, upon defen-<br>dant, Gorham Saving Bank, to Robert E. Dunton. |
| "    " | Summons filed showing officer's return of service on 06-13-00, upon defen-<br>dant, Gorham Savings Bank, to Gregory Palmer. |
| July 18 | Received 7-17-00.<br>Defendant, Robert E. Dunton's, answer filed. |
| "" | Defendant, Gorham Savings Bank's, answer filed. |
| July 18 | Received 7-18-00<br>Defendant Gorham Savings Bank Notification of Discovery Service filed.<br>Defendant Gorham Savings Bank's First Request for production of documents<br>and things propounded upon plaintiffs, notice to take oral depostion of<br>Robert L. Guitard, Edward P. Guitard, and Geraldine M. Guitard served on<br>William D. Robitzek, Esq. on 7-17-00. |
| Aug 3 | Received 8-3-00:<br>Scheduling Order filed. (Warren, J.)<br>Scheduling Order filed. Discovery deadline is 4-3-01.<br>On 8-3-00   copy mailed to William robitzek and Peter Culley, Esquires. |
| Aug. 16 | Received 8-16-00.<br>$300.00 Jury trial fee paid. |